Filed 6/1/16  Certified for publication 6/29/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| JAMES E. REED, | C079432 |
| Plaintiff and Appellant, | (Super. Ct. No. 163486) |
| v. | |
| JAMES GALLAGHER et al., | |
| Defendant and Respondent. | |

Plaintiff James E. Reed appeals from a judgment entered in favor of defendants James Gallagher and Gallagher For Assembly 2014 (together, Gallagher) after the trial court granted Gallagher's special motion to strike pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute (strategic lawsuits against public participation).[1] Reed and Gallagher were rival candidates for the California Assembly. During the final weeks of the campaign, Gallagher ran a 30-second television ad characterizing Reed as

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

an "unscrupulous lawyer." After losing the election, Reed sued Gallagher for defamation based on statements made in the ad.[2] Gallagher responded with a demurrer and special motion to strike under section 425.16. The trial court sustained the demurrer and granted the special motion to strike finding, with respect to the latter motion, that the allegedly defamatory statements arose from protected activity and Reed failed to demonstrate a probability of prevailing on his claim. We affirm.

## I. BACKGROUND

### A.    *The Ad*

Reed and Gallagher were rival candidates for the Third Assembly District in the November 2014 general election. In the weeks leading up to the election, Gallagher ran a 30-second ad with the following voiceover narration: "Jim Reed has launched a negative and misleading campaign, but just who is Jim Reed? Legal records show that Reed is an unscrupulous lawyer who was sued for negligence, fraud and financial elder abuse. Reed's even been ordered to pay back fees he improperly collected from an elderly client. His victim said about Reed, 'He saw a naïve widow and took advantage of me, raked me over the coals.' Jim Reed. Not our values."

As the narrator speaks, the viewer sees grainy, black and white video of Reed in what appears to be one of his own campaign ads. The camera then pauses on a still photograph of Reed, with the words "Who is Jim Reed?" next to it. As the narrator introduces the subject of "legal records," the camera cuts to images of printed pages on pleading paper, with the words "UNSCRUPULOUS LAWYER" superimposed on them.

---

[2] Reed referred to his action as "libel," but as his cause of action concerns communications made by mechanical means, rather than a writing or other fixed representation, the action should have been referred to as one for slander. (Compare Civ. Code, § 45 ["Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye"] and Civ. Code § 46 ["Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means"].)

The camera slowly pans over the cover page of a pleading entitled "Second Amended Complaint" as the words "Negligence," "Fraud," and "Financial Elder Abuse" appear in the foreground. The camera then cuts to video of a gavel hitting a strike plate. A single printed page on pleading paper appears as the narrator states, "Reed's even been ordered to pay back fees he improperly collected from an elderly client." The page, which appears for approximately three seconds, bears the footer, "Order on Motions for Summary Judgment."

The camera then cuts to a "tear out" from The Sacramento Valley Mirror (Valley Mirror). The text of the tear out reads, "He's a crook, he saw a naïve widow and took advantage of me, raked me over the coals." The camera then cuts to more black and white images of Reed, with the words "NOT OUR VALUES" superimposed on them, and the legend, "Paid for By Gallagher for Assembly 2014."

As noted, the ad is approximately 30-seconds. It would not be possible for the average viewer to read the text of the documents shown in the ad without pausing the video.

B.    *The Complaint*

Reed lost the election. (Cal. Secretary of State Debra Bowen, Statement of Vote, Nov. 4, 2014, General Election 9,< http://elections.cdn.sos.ca.gov/sov/2014-general/pdf/2014-complete-sov.pdf > [as of June 1, 2016].) Shortly thereafter, Reed brought suit against Gallagher. Reed's complaint asserts a defamation claim based on the following express and implied representations in the ad: (1) that legal records show Reed is an "unscrupulous lawyer," (2) that Reed has been ordered to pay back fees he improperly collected from an elderly client, (3) that one of the documents depicted in the ad is an order directing Reed to repay fees, and (4) that Reed is a "crook." The complaint generally alleges that Gallagher made the foregoing statements "maliciously."

Gallagher responded with a demurrer and special motion to strike, which we discuss in greater detail momentarily. Among other things, both motions argue that the

3

ad accurately characterizes a malpractice lawsuit against Reed by one of his former clients, Bonnie Hinckley (the *Hinckley* litigation). We describe the *Hinckley* litigation below.

C.    *The Hinckley Litigation*

Hinckley filed an action against Reed and Reed's law firm (for simplicity's sake, Reed) and another attorney, Justin G. Arel and Arel's law firm (together, Arel) in 2010. Hinckley's first amended complaint alleges that she retained Reed to represent her, as associated co-counsel, in a probate dispute following the death of her husband. As relevant here, the complaint alleges that Hinckley entered into a written contingency fee agreement with Reed and Arel, which the parties orally modified following a disagreement as to the fees due and owing under the original agreement. Hinckley ultimately paid the sum of $230,000 in attorneys' fees.

The complaint alleges, inter alia, that the fee agreement failed to comply with Business and Professions Code section 6147, which requires that contingency fee agreements be executed in writing, and include a number of statements, including "a statement that the fee is not set by law but is negotiable between attorney and client." (Bus. & Prof. Code, § 6147, subd. (a)(4).) Under Business and Professions Code section 6147, subdivision (b), "Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." (Bus. & Prof. Code, § 6147, subd. (b).)

The complaint asserts causes of action for negligence, constructive fraud, breach of fiduciary duty, and money had and received. The complaint also seeks rescission of the fee agreement and disgorgement of the $230,000 in fees. In his brief, Gallagher asserts that the complaint was subsequently amended to assert a cause of action for financial elder abuse. The "Second Amended Complaint" depicted in the campaign ad appears to support Gallagher's assertion (which Reed does not deny); however, no such pleading appears in the record.

4

Reed filed a cross-complaint against Hinckley. We have not been provided with a copy of the cross-complaint.

Reed and Hinckley filed cross-motions for summary judgment and summary adjudication, respectively. On June 14, 2011, the trial court entered a two-page order granting Hinckley's motion for summary adjudication with respect to her cause of action for rescission, and denying Reed's motion for summary judgment or, in the alternative, summary adjudication with respect to his cross-complaint. The second page of the order, which bears the footer, "Order on Motions for Summary Judgment," appears in all respects to be identical to one of the pages shown in the ad. Specifically, the second page of the order appears to be the single printed page shown as the narrator states, "Reed's even been ordered to pay back fees he improperly collected from an elderly client."

The order provides, in pertinent part: "IT IS ORDERED that the Court adopts its Ruling, a copy of which is attached hereto as Exhibit '1' and incorporated herein by reference as the final ORDER on these matter [sic] [.] [¶] IT IS FURTHER ORDERED that the motion of [Hinckley] for summary adjudication is GRANTED, and judgment shall be entered in favor of [Hinckley] and against [Reed] on [¶] (1) The Fourth Cause of Action of the First Amended Complaint for Rescission." The ruling, which is incorporated by reference in the order, states that Hinckley "has established as undisputed fact that the underlying contingency fee agreements did not contain the required statutory language set forth in [Business and Professions Code] section 6147[, subdivision ](a)," and "is entitled to rescission of the fee agreement." The ruling additionally notes that Reed is "entitled to collect a 'reasonable fee' as set forth in [Business and Professions Code] section 6147[, subdivision ](b)." Neither the ruling nor the order specifically directs Reed to repay fees to Hinckley.

Following entry of the order, the parties settled their fee dispute. The terms of the settlement were confidential, and have not been made part of the record in the present

5

appeal. However, Reed filed a bill of particulars in the *Hinckley* litigation claiming more than $130,000 in attorneys' fees.

*D.  Hinckley's Comments in the Valley Mirror*

In August 2012, an article appeared in the Valley Mirror entitled, "Congressional hopeful Reed hit in elder abuse cases." (Crews, *Congressional hopeful Reed hit in elder abuse cases,* Sacramento Valley Mirror (Aug. 2012).)  The article notes that Reed, who was then running for Congress, had been involved in two recent elder abuse cases, including the *Hinckley* litigation.[3]  (*Ibid.*)

The article describes the *Hinckley* litigation, and quotes Hinckley as saying of Reed, " 'He's a crook, he saw a naïve widow and took advantage of me, raked me over the coals . . . .' "  (Crews, *Congressional hopeful Reed hit in elder abuse cases,* Sacramento Valley Mirror (Aug. 2012).)  The article acknowledges that the *Hinckley* litigation had been resolved by means of a confidential settlement agreement, but states: "Mr. Arel [Reed's co-counsel] had demanded $272,859 from Mrs. Hinckley.  In the end he had to repay $130,000 to Mrs. Hinckley.  Under the law, he was only entitled to $26,430."  (*Ibid.*)

The article continues, "Mr. Reed took over the case from Mr. Arel.  [¶]  In October of 2009, Mrs. Hinckley paid Mr. Reed's firm for their share of the fee agreement.  [¶] When she demanded her money back, due to being hoodwinked in the initial oral fee agreement, Mr. Reed's firm filed a cross-complaint.  She, however, prevailed.  In early 2011 she received an undisclosed but substantial amount of money from Mr. Reed."

---

[3] The article indicates that Reed was involved in the second action, not as a party, but as attorney for his wife. (Crews, *Congressional hopeful Reed hit in elder abuse cases,* Sacramento Valley Mirror (Aug. 2012) Specifically, the article states that Reed represented his wife on appeal from a jury verdict for " 'financial elder abuse, concealment, conversion, breach of fiduciary duty and negligence.' " (*Ibid.*)

(Crews, *Congressional hopeful Reed hit in elder abuse cases,* Sacramento Valley Mirror (Aug. 2012).)

Reed lost his bid for Congress. After the election, Reed moved to determine whether Hinckley had violated the confidentiality provision in the settlement agreement, based on the article in the *Valley Mirror.* Reed's filings in support of the motion implicitly concede that Reed made payments to Hinckley to settle the fee dispute. For example, Reed's response to Hinckley's opposition to the motion argues, "[Hinckley's] violation allows REED to rescind the settlement agreement under [Civil Code section] 1689[, subdivision ](b)(2) for causing the consideration to fail in part. This would require [Hinckley] to pay back all benefits already received as well as foregoing future benefits." The trial court denied Reed's motion.

### E. *The Demurrer and Anti-SLAPP Motion*

Having described the *Hinckley* litigation, we now return to our discussion of the present case. As noted, Gallagher responded to Reed's complaint with a demurrer and anti-SLAPP motion. Both motions argued that the challenged statements were either nonactionable opinions, true, or substantially true. Gallagher's anti-SLAPP motion additionally argued that none of the challenged statements were made with actual malice, as required for a defamation claim against a public figure. Gallagher supported the motions with a request for judicial notice of the complaint, order and other records from the *Hinckley* litigation. Gallagher also asked the trial court to take judicial notice of the ad.

Reed opposed both motions. In his opposition to the anti-SLAPP motion, Reed argued that the challenged statements were provably false and made with actual malice. Specifically, Reed argued (1) the statement that "legal records show that Reed is an unscrupulous lawyer" falsely implies the existence of legal records supporting the characterization of Reed as unscrupulous, (2) the statement that "Reed's even been ordered to pay back fees he improperly collected from an elderly client" falsely conveys

7

that Reed made payments to Hinckley pursuant to a court order, (3) the image of the order granting Hinckley's motion for summary adjudication of the cause of action for rescission falsely implies the existence of an order compelling Reed to make payments to Hinckley, and (4) the image of the tear out from the Valley Mirror falsely conveys that Reed has been accused of committing a crime. Reed additionally argued that the challenged statements must have been made with actual malice because they were so obviously false.

In connection with the opposition, Reed submitted a declaration describing the *Hinckley* litigation as follows: "In that case, I recovered over $1 million for the client in a Will Contest of her husband's Will against his children from a prior marriage. . . . When we unexpectedly settled the case very favorably, she requested and I agreed to reduce my fees from the agreed upon contingency amount. However after she paid me, she sued to recover some of the fees paid. Although a summary adjudication was entered in her favor determining that the fee would not be calculated pursuant to our agreement or the compromised amount, the court order specified that I was entitled to reasonable attorney fees; we settled the case and agreed to keep the settlement confidential before the court determined what a reasonable fee would be. There was never a court order requiring me to pay fees back to her as the offending advertisement stated and the order depicted in the advertisement directly contradicts such a statement."

In his declaration, Reed also avers that he has never been disciplined by the state bar, and has "never been accused or charged with [a] crime more serious than an infraction for speeding."

Reed also opposed Gallagher's demurrer, incorporating his opposition to the anti-SLAPP motion by reference and requesting leave to amend the complaint to assert a cause of action under Civil Code section 3344.6, which establishes a private right of action for violations of Penal Code section 115.2, subdivision (a). As we shall discuss, Penal Code section 115.2, subdivision (a) makes it a crime to "publish or cause to be

published, with actual knowledge, and intent to deceive, any campaign advertisement containing false or fraudulent depictions, or false or fraudulent representations, of official public documents or purported official public documents."

The trial court entered an order sustaining the demurrer and granting the anti-SLAPP motion. With respect to the anti-SLAPP motion, the trial court found that "[Gallagher] met [his] burden of showing that [Reed's] libel claim arises from activity protected by [Gallagher's] right to freedom of speech secured by the United States and California Constitutions. [Reed] failed to meet his burden of establishing a probability of prevailing on his claim." With respect to the demurrer, the trial court determined that Reed failed to state facts sufficient to constitute a cause of action for libel because "none of the allegedly defamatory statements constitute 'provably false statements of fact.' " The trial court entered judgment in Gallagher's favor shortly thereafter.

Reed filed a timely notice of appeal.

## II. DISCUSSION

A.                          *The Anti-SLAPP Statute and Standard of Review*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute " 'provides a procedure for the early dismissal of what are commonly known as SLAPP suits . . .—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights.' [Citation.] A SLAPP suit is generally brought to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff." (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 40.)

9

Section 425.16, subdivision (e) describes the type of activity protected by the anti-SLAPP statute.  An " 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue' includes (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)

The analysis of an anti-SLAPP motion involves two steps.  " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citation.]  'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'  [Citation.]"  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)

Our review of the trial court's order on an anti-SLAPP motion is de novo.  (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820.)  If the trial court's decision denying an anti-SLAPP motion is correct on any theory applicable to the case, we may affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.  (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

10

*B.      Protected Activity*

Reed's defamation cause of action is based on allegedly defamatory statements in the ad. Reed properly concedes that section 425.16 would ordinarily apply to statements made during the course of a political campaign. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 273-274 ["It is well settled that section 425.16 applies to actions arising from statements made in political campaigns by politicians and their supporters, including statements made in campaign literature"].) Relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), however, Reed contends section 425.16 does not apply because Gallagher's conduct was illegal as a matter of law. Specifically, Reed contends Gallagher violated Penal Code section 115.2 by displaying the order granting Hinckley's motion for summary adjudication with intent to deceive viewers into believing that (1) there are legal records showing that Reed is unscrupulous, and (2) Reed has been ordered to pay back fees to a client. We are not persuaded.

*Flatley* establishes a narrow exception to the anti-SLAPP statute that applies only where the defendant concedes the illegality of his conduct or the evidence conclusively establishes the conduct complained of was illegal as a matter of law. (*Flatley, supra,* 39 Cal.4th at p. 320; see also *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 386 [the exception for illegal activity is narrow and only applies in "rare cases in which there is uncontroverted and uncontested evidence that establishes the crime as a matter of law"].) Neither of these conditions applies here. First, Gallagher emphatically denies the ad violates Penal Code section 115.2.[4] Consequently, there has been no concession that

---

[4] Gallagher notes that Penal Code section 115.2 does not, by its terms, apply to broadcast communications. (Pen. Code, § 115.2, subd. (b) ["For purposes of this section, 'campaign advertisement' means any communication directed to voters by means of a mass mailing as defined in Section 82041.5 of the Government Code, a paid newspaper advertisement, an outdoor advertisement, or any other printed matter"].) We need not decide whether Penal Code section 115.2 applies to resolve the present appeal, and therefore decline to reach the issue.

11

Gallagher's conduct was illegal as a matter of law. Second, assuming arguendo that Penal Code section 115.2 applies, the evidence fails to conclusively establish illegality. (*Flatley, supra,* at p. 320.)

As noted, Penal Code section 115.2, subdivision (a) makes it a crime to "publish, or cause to be published, with actual knowledge, and intent to deceive, any campaign advertisement containing false or fraudulent depictions, or false or fraudulent representations, of official public documents or purported official public documents." Here, though Reed argues Gallagher acted with the required state of mind, nothing in the record supports Reed's contention. As we shall discuss, the evidence fails to show that Gallagher acted with malice, let alone "actual knowledge, and intent to deceive." (*Ibid.*) We therefore conclude that *Flatley*'s illegality exception does not apply. The trial court correctly determined that Reed's cause of action arises from "protected activity" under the statute.

C.      *Probability of Prevailing on the Merits*

Once a defendant has met his burden to show the complaint alleges acts arising from protected activity, the burden shifts to the plaintiff to make a prima facie showing of facts which, if proven, would support a judgment in his favor. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) The "burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.)

To prevail on a claim for defamation, Reed must prove that Gallagher intentionally communicated to a third person, either orally or in writing, a false, unprivileged statement about him that had a natural tendency to injure him or that caused him special damage. (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645.)

12

Furthermore, because Reed is a public figure, he must also demonstrate, by clear and convincing evidence, that the challenged statements were made with actual malice.**5** (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 84 (*Christian Research*).)

As noted, Reed challenges the following express and implied representations in the ad:  (1) that legal records show Reed is an "unscrupulous lawyer," (2) that Reed has been ordered to pay back fees he improperly collected from an elderly client, (3) that one of the documents depicted in the ad is an order directing Reed to repay fees, and (4) that Reed is a "crook."  Gallagher does not deny publishing these statements to third parties. We therefore focus our inquiry on whether the statements are reasonably susceptible of a defamatory interpretation, including whether they are false, and if so, whether Reed has made a prima facie showing of evidence from which a trier of fact might conclude that Gallagher acted with actual malice.

    *1.    Falsity*

"The *sine qua non* of recovery for defamation . . . is the existence of falsehood." (*Old Dominion Branch No. 496 v. Austin* (1974) 418 U.S. 264, 283.)  " 'The falsehood requirement is grounded in the First Amendment itself.  "Under the First Amendment there is no such thing as a false idea.  However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."  [Citations.]' "  (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1048.)

"To state a defamation claim that survives a First Amendment challenge, thus, plaintiff must present evidence of a statement of fact that is 'provably false.'  [Citations.] ' "Statements do not imply a provably false factual assertion and thus cannot form the

---

**5** The parties agree that Reed is a public figure.

basis of a defamation action if they cannot ' "reasonably [be] interpreted as stating actual facts" about an individual.' [Citations.] Thus, 'rhetorical hyperbole,' 'vigorous epithet[s],' 'lusty and imaginative expression[s] of . . . contempt,' and language used 'in a loose, figurative sense' have all been accorded constitutional protection. [Citations.]" [Citation.] The dispositive question . . . is whether a reasonable trier of fact could conclude that the published statements imply a provably false factual assertion. [Citation.]' [Citation.]" (*Nygard, Inc. v. Uusi-Kerttula, supra,* 159 Cal.App.4th at p. 1048.)

"To ascertain whether the statements in question are provably false factual assertions, courts consider the ' " 'totality of the circumstances.' " ' [Citation.]" (*Nygard, Inc. v. Uusi-Kerttula, supra,* 159 Cal.App.4th at p. 1049.) " ' "First, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense. . . . This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed." ' [Citations.]" (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809-810.) " 'Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide [citations], unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood.' " (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1471.)

As noted, the trial court determined that, "none of the allegedly defamatory statements constitute 'provably false statements of fact.' " Reed insists that each of the challenged statements declares or implies a provably false assertion of fact. We consider the challenged statements, albeit in a slightly different order, below.

a. *Legal records show that Reed is an unscrupulous lawyer . . .*

Reed contends Gallagher defamed him by stating in the ad that, "Legal records show that Reed is an unscrupulous lawyer who was sued for negligence, fraud and financial elder abuse." Reed appears to acknowledge that he is a lawyer, who was sued for negligence, fraud, and financial elder abuse. Reed also appears to acknowledge that the statement, "Reed is an unscrupulous lawyer" would be a non-actionable statement of opinion, rather than a provably false assertion of fact. However, Reed contends the statement "*Legal records show* that Reed is an unscrupulous lawyer" implies the existence of legal records demonstrating that he lacks scruples. Reed suggests that such records either exist or do not exist, and therefore, the statement is provably false. We are not convinced.

Reed's argument assumes that legal records could conclusively establish whether or not he is unscrupulous.[6] However, trial courts do not adjudicate questions of character, and consequently do not generate records establishing whether or not litigants have scruples. Instead, trial courts adjudicate disputes, which may or may not have some bearing on the character of the litigants, depending on one's point of view. It follows that determining what legal records show, so far as a person's character is concerned, involves a high degree of subjectivity. Such subjective judgments are incapable of being proved true or false. (*Gallagher v. Connell* (2004) 123 Cal.App.4th 1260, 1270 ["a subjective judgment of the person making the statement," is not one that implies a provably false factual assertion].) We therefore conclude that the statement, "Legal

---

[6] Merriam-Webster's Collegiate Dictionary defines "unscrupulous" as "not scrupulous: UNPRINCIPLED." (Merriam-Webster's Collegiate Dict. (11th ed. 2006, p. 1372, col. 1.) The dictionary defines "scrupulous" as "1: having moral integrity: acting in strict regard for what is considered right or proper 2: punctiliously exact: PAINSTAKING <working with~care >." (*Id.* at p. 1117, col. 2.)

15

records show that Reed is an unscrupulous lawyer" does not declare or imply a provably false statement of fact.

Having so concluded, we necessarily conclude that the statement is nondefamatory. (See *Carver v. Bonds* (2005) 135 Cal.App.4th 328, 348 [concluding that statements were nondefamatory because they were based on "entirely subjective matters rather than provably false factual assertions"]; see also *Copp v. Paxton* (1996) 45 Cal.App.4th 829, 837 [noting that courts have regarded as nondefamatory any " 'broad, unfocused and wholly subjective comment,' [citation] such as that the plaintiff was a 'shady practitioner' [citation], 'crook' [citation], or 'crooked politician' [citation]"].) We find support for our conclusion in *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944 (*Beilenson*).

In *Beilenson*, an unsuccessful Congressional candidate, Sybert, sued his opponent, Beilenson, for libel based on statements made in a campaign mailer. (*Beilenson*, *supra*, 44 Cal.App.4th at p. 947.) The mailer stated that Sybert "ripped off" California taxpayers by maintaining a private law practice while employed by the state. (*Ibid.*) The mailer also criticized Sybert for representing clients who could profit from their association with him, claiming that such representation amounted to " 'a serious conflict of interest and breach of public trust.' " (*Ibid.*)

Sybert established that there was nothing illegal or unethical about maintaining a law practice while in the employ of the state. (*Beilenson*, *supra*, 44 Cal.App.4th at p. 951.) Nevertheless, the court concluded that the challenged statements were nondefamatory. (*Id.* at p. 952.) The court explained: "The mailer here proclaimed it to be wrong for a state official to have an outside job, the implication being that all of the official's time, attention, and energies ought to be devoted to his public post. This conduct, in the opinion of Beilenson, was a 'rip off.' This colorful epithet, when taken in context with the other information contained in the mailer, was rhetorical hyperbole that is common in political debate. [Citations.] As such, the term 'rip-off' was not

16

defamatory." (*Id.* at pp. 951-952; see also *James v. San Jose Mercury News, Inc.* (1993) 17 Cal.App.4th 1, 12, 14 [article describing lawyer as engaging in "sleazy, illegal, and unethical practice" fell into "protected zone of ' "imaginative expression" ' or ' "rhetorical hyperbole" ' "].)

The court continued: "Sybert's practice of law, and his receipt of substantial fees from a certain class of clients, while employed as a state official, does not violate the law. Nonetheless, a citizen could possess the belief that such a custom violates a higher code of ethical precepts. To charge a breach of ethics is not to charge a breach of the law. Beilenson's accusations were statements of opinion entitled to the protection of the First Amendment. [Citations.]" (*Beilenson*, *supra*, 44 Cal.App.4th at p. 952; see also *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 117 ["Behavior that might qualify as immoral to one person, although being perfectly acceptable to another person, demonstrates that an amorphous assertion of immoral behavior is within the range of statements of opinion that are not actionable"].)

Following *Beilenson*, we conclude that the characterization of Reed as "unscrupulous" is a subjective judgment, rather than a provably false statement of fact. (*Beilenson*, *supra*, 44 Cal.App.4th at p. 952.) We further conclude that the average viewer, considering the ad in context, would have understood the word "unscrupulous" to reflect Gallagher's opinion or interpretation of what legal records from the *Hinckley* litigation show, rather than a precise rendering of any particular legal record. We therefore conclude that Reed has failed to establish a probability of prevailing on a defamation claim based on the statement that "Reed is an unscrupulous lawyer."

        b.    *He's a crook . . .*

Reed also contends he was defamed by Hinckley's characterization of Reed as "a crook." According to Reed, Hinckley's characterization, which was republished in the ad, falsely implies that he "committed illegal and unethical actions." Gallagher responds

that, "No reasonable viewer would have thought that Hinckley was accusing Reed of actual criminal activity." Gallagher has the better argument.

As noted, courts apply a totality of the circumstances test in determining whether a statement is actionable fact or nonactionable opinion. (*Nygard, Inc. v. Uusi-Kerttula*, *supra*, 159 Cal.App.4th at p. 1049.) This requires an examination of the statements themselves and the context in which they were made. (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 384.) On the issue of context, our Supreme Court has explained: "[W]here potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion." (*Gregory v. McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 601.)

Here, the challenged statement was made during the heat of a political campaign, a context in which the audience would naturally anticipate the use of rhetorical hyperbole. (*Beilenson*, *supra*, 44 Cal.App.4th at p. 954 ["Hyperbole, distortion, invective, and tirades are as much a part of American politics as kissing babies"].) Against this backdrop, Hinckley's characterization of Reed as a "crook" cannot reasonably be understood in the literal sense to mean that Reed committed any crime. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 264-265 [candidate's characterization of opponent as a "thief" was "reasonably interpreted as loose figurative language and hyperbole, not a claim that the plaintiff actually had a criminal past"]; see also *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 190, 191 [statement that plaintiff was a "crook" and "crooked politician" was "merely rhetorical and hyperbolic language"].) Rather, the audience, having heard that Hinckley and Reed had been involved in a fee dispute, would have reasonably understood Hinckley to mean that Reed overcharged her for legal services. In context, Hinckley's comments do not declare or imply a provably false factual assertion; they merely offer an opinion as to the value of Reed's legal

18

services.  Hinckley's opinion, though unflattering, is not defamatory.  We therefore conclude that Reed has failed to establish a probability of prevailing on a defamation claim based on the statement that "He's a crook."[7]

   c.      *Reed's even been ordered to pay back fees . . .*

Reed also contends he was defamed by the statement, "Reed's even been ordered to pay back fees he improperly collected from an elderly client."  Reed does not deny that he improperly collected fees from Hinckley, who is elderly.  Nor does Reed deny that he paid some portion of the fees back.[8]  Instead, Reed objects to the statement that he was

---

[7] Reed relies on a New York case, *Rinaldi v. Holt, Rinehart & Winston, Inc.* (1977) 42 N.Y.2d 369 [397 N.Y.S.2d 943, 366 N.E.2d 1299] for the proposition that allegations of criminal activity are not entitled to constitutional protection, even when presented in the form of an opinion.  (*Id*. at p. 951 ["Accusations of criminal activity, even in the form of opinion, are not constitutionally protected.  [Citations.]  While inquiry into motivation is within the scope of absolute privilege, outright charges of illegal conduct, if false, are protected solely by the actual malice test. . . .  No First Amendment protection enfolds false charges of criminal behavior"].)

*Rinaldi* is not binding on this court, and we decline to follow it.  In any case, we note that the New York courts appear to have abandoned the *per se* rule suggested by *Rinaldi*.  (See *Gross v. New York Times Co.* (1993) 82 N.Y.2d 146, 154-155 [603 N.Y.S.2d 813, 623 N.E.2d 1163] [statements were actionable "not, as plaintiff would have it, because they involve accusations of criminality per se, but rather because in this context they convey 'facts' that are capable of being proven true or false.  Although plaintiff repeatedly suggests otherwise, there is simply no special rule of law making criminal slurs actionable regardless of whether they are asserted as opinion or fact"].)  Here, as we have discussed, Hinckley's characterization of Reed as a "crook" is not defamatory in context.

[8] Reed is notably vague as to whether or not he actually returned fees to Hinckley.  He does not deny paying back fees to Hinckley, but observes that he was entitled to retain a reasonable fee, implying that he may have retained fees in an amount sufficient to offset any fees he might otherwise have been required to pay back.

We need not resolve the issue of Reed's fees because Reed had the burden of showing that the challenged statements were false.  (*Vogel v. Felice* (2005) 127 Cal.App.4th 1006, 1021 ["A public figure or public official who seeks to recover damages for a defamatory

19

*ordered* to pay back fees.  Reed similarly objects to the image of the order in the ad, which, when viewed in combination with the voiceover narration, implies that Reed was ordered to pay back fees.  According to Reed, these express and implied statements are provably false because he was never "ordered" to pay back fees to Hinckley.

Gallagher responds that the challenged statements are true or substantially true.  According to Gallagher, the *Hinckley* court effectively ordered Reed to pay back fees by granting Hinckley's motion for summary adjudication, thereby giving Hinckley the right to rescind the contingent fee agreement.  Gallagher correctly observes that, " 'The consequence of rescission is . . . the restoration of the parties to their former positions by requiring each to return whatever consideration has been received.' " (*Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959-960.)  Because the *Hinckley* court summarily adjudicated the rescission cause of action in Hinckley's favor, and because rescission, in the context of a fee dispute, would involve paying back fees, Gallagher argues the challenged statement was true or substantially true.

"As in other jurisdictions, California law permits the defense of substantial truth and would absolve a defendant even if she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.' [Citation.]" (*Masson v. New Yorker Magazine, Inc.* (1991) 501 U.S. 496, 516-517.)  "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' [Citations.]" (*Id.* at p. 517.)  In other words, a "slight discrepancy" of facts (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 28) or a "semantic hypertechnicality" (*James v. San*

statement bears the burden of proving that the challenged statement was false"].)  Reed made no attempt to disprove the non-italicized portions of the statement that "Reed's even been *ordered* to pay back fees he improperly collected from an elderly client."  We therefore assume the non-italicized portions of the statement were true.

20

*Jose Mercury News*, *supra*, 17 Cal.App.4th at p. 17) will not defeat a substantial truth defense.

We do not perceive a significant difference in the "sting" of the technically inaccurate statement that Reed was *ordered* to pay back fees improperly collected from an elderly client and the accurate but still embarrassing statement that Reed, having been found to have improperly collected fees from an elderly client, returned the fees pursuant to a confidential settlement agreement before he could be ordered to do so. Whether Reed returned fees to Hinckley pursuant to a court order, or returned them pursuant to a settlement entered as a consequence of a court order, would appear to us to make little difference in the mind of the average viewer. (See *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1404 ["when analyzing the statements in question, courts do so from the perspective of the average reader, not a person trained in the technicalities of the law"]; see also *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1050, fn. 6 [misstating that a criminal investigation was started by the district attorney rather than by the state auditor did not change the gist or sting of the alleged libel].) We need not decide this issue, however, because, as we shall discuss, Reed fails to show that the statement was made with actual malice.

*2. Actual Malice*

"A public figure suing for defamation 'must demonstrate "actual malice" by clear and convincing evidence.' [Citation.] Actual malice 'requires a showing that the allegedly false statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." [Citation.] The reckless disregard standard requires a "high degree of awareness of . . . probable falsity . . . ." [Citation.]' [Citation.] 'The question is not " 'whether a reasonably prudent [person] would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and

21

demonstrates actual malice.' " [Citation.]' [Citation]." (*Burrill v. Nair*, *supra*, 217 Cal.App.4th at p. 389.) " ' "The burden of proof by clear and convincing evidence 'requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind.' " [Citation.]' [Citation]." (*Id.* at pp. 389-390.)

As noted, Reed appropriately concedes that he is a public figure, and must therefore establish actual malice by clear and convincing evidence at trial. Thus, in order to successfully defend against Gallagher's anti-SLAPP motion, Reed must "establish a probability that [he] will be able to produce clear and convincing evidence of actual malice." (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1167 (*Annette F.*).) Put another way, Reed must make a prima facie showing of facts demonstrating a high probability that Gallagher published the challenged statements with knowledge of their falsity or while entertaining serious doubts as to their truth. (See *Burrill v. Nair, supra*, 217 Cal.App.4th at p. 357; see also *Annette F.*, *supra*, at p. 1169 [defamation plaintiff bears "the burden of making a 'sufficient prima facie showing of facts to sustain a favorable judgment' on the issue of actual malice"].) Reed has failed to make the required showing.

Reed offered no evidence of actual malice in the trial court. Instead, Reed argued, as he does on appeal, that the remaining statements—that "Reed's even been ordered to pay back fees he improperly collected from an elderly client" and the implied representation that the order granting Hinckley's motion for summary adjudication was an order directing Reed to pay back fees—must have been made with actual malice because they were so obviously false.[9] According to Reed, "It is easy in this case to demonstrate actual malice. . . . The documents [Gallagher] flashed on the commercial

---

[9] Having concluded that the characterizations of Reed as "unscrupulous" and a "crook" are nondefamatory, we need not consider whether they were made with actual malice.

simply do not say what the commercial insinuates they say." Reed's argument fails to persuade.

There is a "significant difference between proof of actual malice and mere proof of falsity." (*Bose Corp. v. Consumers Union* (1984) 466 U.S. 485, 511, fn. omitted.) "The burden of proving 'actual malice' requires the plaintiff to demonstrate with clear and convincing evidence that the defendant *realized* that his statement was false or that he *subjectively entertained serious doubt as to the truth of his statement*." (*Id.* at p. 511, fn. 30, emphasis added.) We could, in an appropriate case, infer actual malice from a statement that was so obviously false that any reasonable person would have known that the statement was untrue. (See *Annette F.*, *supra*, 119 Cal.App.4th at pp. 1169-1170.) But this is not such a case.

As we have discussed, the "gist or sting" of the statement that "Reed's even been ordered to pay back fees he improperly collected from an elderly client" is not so very different from the "truth," so far as the record reveals, that Reed, having been found to have improperly collected fees from an elderly client, returned some or all of the fees pursuant to a confidential settlement agreement before he could be ordered to do so. Under these circumstances, we conclude that the challenged statement was not so far removed from the truth as to permit an inference of actual malice, even assuming arguendo that it was false.

We find support for our conclusion by analogy to *Annette F.*, *supra*. There, two former domestic partners (Annette and Sharon) had been involved in a highly publicized lawsuit involving second parent adoption. (*Annette F., supra*, 119 Cal.App.4th at p. 1157.) Annette sued Sharon for libel based on statements Sharon made in a letter to a newspaper calling Annette a "convicted perpetrator of domestic violence against me." (*Id.* at p. 1158, italics omitted.) Sharon responded with an anti-SLAPP motion pursuant to section 425.16. (*Ibid.*)

23

In support of the motion, Sharon submitted a declaration averring that her statement was based on an earlier family court proceeding in which the court found that Annette had committed domestic violence against Sharon and entered a restraining order against her. (*Id.* at p. 1168.) Sharon also explained that she was not a lawyer and believed the statement to be true based on her " 'understanding of the legal proceedings involving Annette's domestic violence against me.' " (*Ibid.*) Annette, for her part, offered evidence that Sharon harbored ill will towards her and sought to discredit her in the gay and lesbian community. (*Id.* at p. 1169.) Annette also observed that Sharon had ample opportunity to check the accuracy of the statement before publishing it. (*Ibid.*)

The court of appeal acknowledged that Sharon's statement was technically inaccurate insofar as it suggested that Annette had been convicted of a crime. (*Annette F.*, *supra*, 119 Cal.App.4th at p. 1168.) Nevertheless, the court concluded that Annette failed to establish a probability of proving actual malice by clear and convincing evidence. (*Ibid.*) The court explained: "On the particular facts of this case, the factors cited by Annette do not establish a probability of proving actual malice by clear and convincing evidence. In our view, a critical consideration in determining the weight to be given such factors is the extent to which the allegedly defamatory statement deviates from the truth. False statements that are completely 'fabricated by the defendant' or 'so inherently improbable that only a reckless [person] would have put them in circulation' are particularly likely to have been made with actual malice. [Citations.] [¶] On the other hand, false statements that have some element of truth to them are logically less susceptible to such a finding." (*Id.* at pp. 1169-1170.)

Applying these principles, the court concluded that, "Sharon's statement that Annette was a 'convicted perpetrator of domestic violence' was not so far from the truth as to permit an inference of actual malice by clear and convincing evidence, even considering the additional evidence of hostility, alleged motive, and lack of investigation. At the most, these additional factors raised a speculative possibility that Sharon might

24

have known or suspected that her use of the word 'convicted' was technically incorrect. 'Such a speculative possibility falls short of clear and convincing evidence.' [Citation.]" (*Annette F.*, *supra*, 119 Cal.App.4th at p. 1170.) Accordingly, the court reversed the trial court's order denying Sharon's anti-SLAPP motion. (*Id.* at p. 1172.)

Likewise, in the present case, the challenged statement was not so far from the truth as to permit an inference of actual malice by clear and convincing evidence. (*Annette F.*, *supra*, 110 Cal.App.4th at p. 1170; see also *Christian Research*, *supra*, 148 Cal.App.4th at pp. 88-89.) Though technically incorrect, the statement contains elements of truth (e.g., Reed improperly collected fees from an elderly client and repaid some or all of the fees following entry of a court order) and cannot be said to have been "completely 'fabricated by the defendant' or 'so inherently improbable that only a reckless [person] would have put them in circulation.' " (*Annette F.*, *supra*, 110 Cal.App.4th at p. 1170.) In the absence of any additional evidence of actual malice (and Reed has offered none), we can only speculate as to whether or not Gallagher knew or suspected that the ad's characterization of the order was technically incorrect. As noted, such speculation falls short of the evidence necessary to make a prima facie showing of actual malice. (*Annette F.*, 148 Cal.App.4th at p. 1170.) We therefore conclude that Reed has failed to establish a probability of proving actual malice by clear and convincing evidence.

"The overwhelming weight of authority is that campaign rhetoric is protected speech and, as such, recovery by a candidate is highly unusual. [Citations.]" (*Beilenson*, *supra*, 44 Cal.App.4th at p. 956.) We perceive no reason to countermand the overwhelming weight of authority in this case. We therefore conclude that (1) the statements characterizing Reed as "unscrupulous" and a "crook" are nondefamatory, and (2) assuming arguendo that the remaining statements are false, Reed has failed to establish a probability of proving actual malice by clear and convincing evidence. Accordingly, we conclude that Gallagher's anti-SLAPP motion was properly granted. Having so concluded, we need not determine whether the demurrer was properly

25

sustained without leave to amend.  (See *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 629 ["Trial courts should either grant or deny [anti-SLAPP] motions in toto, i.e., without leave to amend, prior to ruling on any pending demurrers.  A proper ruling on the anti-SLAPP motion would, in most cases, obviate the need to rule on the demurrer at all or, at the very least, in its entirety"].)

## III.  DISPOSITION

The judgment is affirmed.  Respondents James Gallagher and Gallagher For Assembly 2014 are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

RENNER, J.



We concur:


/S/

ROBIE, Acting P. J.


/S/

BUTZ, J.


26

Filed 6/29/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| JAMES E. REED, | C079432 |
| Plaintiff and Appellant, | (Super. Ct. No. 163486) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| JAMES GALLAGHER et al., | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed June 1, 2016, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered. There is no change in judgment.

BY THE COURT:

    _____
ROBIE, Acting P. J.

    _____
BUTZ, J.

    _____
RENNER, J.

1

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of Butte County, Michael P. Candela, Judge.  Affirmed.

Nichols, Catterton, Downing & Reed, Richard K. Veres, Brooke Veres Reed and James E. Reed for Plaintiff and Appellant.

Benbrook Law Group, Bradley A. Benbrook and Stephen M. Duvernay for Defendant and Respondent.