Filed 10/30/25; Certified for Publication 11/20/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| ONETASTE INCORPORATED, | B339113 |
|---|---|
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCV27119) |
| v. | |
| NETFLIX, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Affirmed.

Landes Law Corporation and Ezra D. Landes for Plaintiff and Appellant.

Horvitz & Levy, Mark A. Kressel, Jeremy B. Rosen; Davis Wright Tremaine, Jonathan Segal, Alison Schary, Rachel R. Goldberg, and Samantha Lachman for Defendant and Respondent.

In 2023, plaintiff and appellant OneTaste, Inc. sued defendant and respondent Netflix for defamation, alleging that a Netflix documentary about OneTaste falsely stated that OneTaste was involved in the sexual assault and abuse of a former employee. The trial court granted Netflix's motion to strike the complaint under Code of Civil Procedure section 425.16.[1] We conclude OneTaste failed to demonstrate a probability of prevailing on the element of actual malice. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *OneTaste Background and Media Reports*

In 2004, Nicole Daedone founded OneTaste, a wellness company that promoted a sexual practice known as "orgasmic meditation" (OM). OneTaste held events, lectures, and coaching sessions on OM at its "urban retreat centers" and had residences where OM participants lived together. By 2012, OneTaste had opened locations in major cities in the United States and abroad. As OneTaste gained popularity, several news outlets reported on its practices and surrounding controversy, including accusations that it was a cult.

In 2018, Bloomberg journalist Ellen Huet wrote an article titled "The Dark Side of the Orgasmic Meditation Company." In interviews with Bloomberg, 16 former OneTaste staffers and community members described OneTaste as "a kind of prostitution ring—one that exploited trauma victims and others searching for healing." They accused OneTaste of predatory

---

[1] All subsequent statutory references are to the Code of Civil Procedure.

tactics that "pushed members to ignore their financial, emotional, and physical boundaries in ways that left them feeling traumatized." They described OneTaste teaching employees to work "for free or cheap to show devotion," and "order[ing] staffers to have sex or OM with each other or with customers." Some interviewees stated that the company characterized incidents of domestic violence between employees in relationships "as one partner letting out his or her aggressive desire, or 'beast.'" Huet's article referenced the allegations of former employee Ayries Blanck. The article disclosed that in 2015, OneTaste paid Blanck $325,000 to settle her claim that OneTaste management "ordered her to sleep with customers and managers," which Blanck considered to be sexual assault.

Following the publication of the Bloomberg article, several other news outlets reported on the controversy, including accusations that OneTaste exploited and manipulated its employees. The news outlets also reported that the FBI was investigating whether OneTaste had committed sexual abuse and financial crimes.

Several media outlets specifically reported on Blanck's allegations of sexual abuse against OneTaste or anonymized allegations consistent with her story. A 2018 Playboy article recounted a story under the pseudonym "Diana." "Diana" said she was "'reamed out for not having sex with other people'" by OneTaste staff. She stated that Rachel Cherwitz, OneTaste's former head of sales, told her that her traumatic response to sex was "'purifying'" and "'supposed to happen,'" and that her boyfriend physically abused her because "'[h]e was just doing what ["Diana's"] body was asking for.'" Cherwitz told Diana to have more sex and "'would find all these guys for ["Diana"] on

3

Tinder.' " "Diana" also stated that she and other OneTaste employees were " 'set up' " to have sex with prospective customers for OneTaste courses.

In 2020, the BBC released a podcast series about OneTaste titled "The Orgasm Cult."[2] One episode included reporting about someone using the pseudonym "Cassidy," told through an anonymous source. The source stated that "Cassidy" and her boyfriend were "heavily involved" with OneTaste and "Cassidy" worked in sales. "Cassidy's" boyfriend was wealthy and spent "hundreds of thousands of dollars" on OneTaste courses. When "Cassidy" was abused and raped by her boyfriend, Cherwitz blamed "Cassidy" for bringing out her boyfriend's "beast" and said "Cassidy" had to "look inside herself" to fix it. OneTaste also instructed "Cassidy" to have sex or OM with people other than her boyfriend, including wealthy customers, purportedly to heal her childhood trauma. According to the source, someone at OneTaste "set up a Tinder account for ['Cassidy'], and she was in a room, and they would just get strangers to come in and have sex with her in order to 'crack her open' or 'release her orgasm.' So she was having lots of sexual intercourse with strangers who were brought in to have sex with her while somebody was outside the door just kind of letting them in one-by-one." The source recounted that although "Cassidy" was visibly traumatized and physically ill, OneTaste maintained that "Cassidy" was "healing." OneTaste leadership reportedly "shame[d] and isolate[d]" "Cassidy" and others who expressed that they were "upset or in pain" after engaging in sexual activities at OneTaste's direction.

_____

[2] Netflix lodged several audio and video files as exhibits below, including its documentary and the BBC podcast episode. These exhibits are included in the record on appeal.

4

When OneTaste leadership set "Cassidy's" boyfriend up with another woman and encouraged them to get married, "Cassidy" left OneTaste.[3]

### *Netflix Documentary*

In November 2022, Netflix released the documentary "Orgasm Inc.: The Story of OneTaste." According to director Sarah Gibson, the documentary "includes primary-source archival material spanning more than a decade, providing an inside look at OneTaste's philosophy and teachings, its charismatic founder Daedone, and the experience of its close-knit community. It also features original interviews with multiple former members and with Ellen Huet, the Bloomberg journalist whose June 2018 investigative article drew significant critical attention to the organization." The documentary refers to Blanck's allegations, including as recounted by her sister Autymn.

In October 2022, OneTaste sued Blanck for breach of contract and fraudulent inducement, alleging she breached a confidentiality and non-disparagement agreement. In April 2023, a federal grand jury indicted Daedone and Cherwitz on charges of engaging in a forced labor conspiracy.

### *OneTaste's Defamation Complaint*

In November 2023, OneTaste filed a defamation action against Netflix. The complaint alleged that "the final 15 minutes" of the documentary made "false statements of fact that OneTaste condones violence against women and that a woman was raped and beaten in connection with her employment at OneTaste and participation in its classes and events."

---

[3] OneTaste does not appear to dispute that "Diana" and "Cassidy" were, in fact, Blanck.

5

The complaint alleged the documentary published five false statements of fact. The first was made by Blanck's sister Autymn. In the documentary, Autymn purported to read from e-mails she said Blanck sent her after resigning from OneTaste in 2015. Autymn referred to the e-mails as therapeutic "journals" that Blanck wrote in 2015. Autymn read from one alleged entry in which Blanck described a OneTaste event at which she disclosed that her boyfriend had physically abused her. Blanck reportedly stated in the journal entry that she received no support or sympathy from the participants and was told she had asked for the abuse. According to Autymn's reading, Blanck stated that she " 'was told that sometimes our soulmates must do violent things to help us grow. It was only a way to condone violence.' "

The second statement was attributed to OneTaste's former employee Audrey Wright. The documentary showed Wright talking on the phone to an FBI agent. She told the agent that OneTaste encouraged participants to "be welcoming of the predatory nature of men . . . and so when that thing about them finding some strangers to rape her happened, totally made sense to me as far as what the conversations I heard and the behavior that I witnessed." A statement then appeared on screen confirming that Wright was referring to Blanck.

The third and fourth statements occurred during an exchange between an interviewer and Autymn. Autymn relayed an anecdote about Blanck becoming physically ill after being "forced upon multiple people" and suffering abuse from her boyfriend. Autymn then read another purported journal entry in which Blanck stated that OneTaste justified " 'the shaking, the vomiting, the weightlessness, the sickness' " she experienced

6

after being " 'forced' " into sexual acts as " 'just an orgasm,' "
" 'alchemizing trauma and pain from when [she] was younger,' "
and necessary for her " 'next level of awakening and freedom.' "
An off-screen interviewer then commented, "This is your sister's
body reacting to the sexual assaults and the beatings."  Autymn
replied, "Yes, yes.  Yeah.  Yeah.  And the sexual assaults and the
beatings, and I think the manipulation of trying to convince
someone that that is right."

The fifth statement appeared in the final scene before the
credits, in which the following text appeared: "If you or someone
you know has experienced sexual violence, information and
resources are available at www.wannatalkaboutit.com."

OneTaste alleged that, based on these statements, "the
average reasonable viewer would impute to OneTaste that Ayries
Blanck was raped and beaten in connection with her employment
at OneTaste and her participation in OneTaste's classes and
events, and that it was condoned by OneTaste."  OneTaste
alleged that it "provided Netflix with information that proved the
falsity of the defamatory statements."  OneTaste further alleged
that Netflix published the false statements with actual malice
and, alternatively, that the actual malice standard was
unconstitutional as applied to OneTaste.

***Netflix's Special Motion to Strike***

In March 2024, Netflix filed a special motion to strike
OneTaste's complaint pursuant to section 425.16.  Netflix
contended that OneTaste's cause of action arose out of Netflix's
protected activity.  Netflix further asserted that OneTaste could
not demonstrate a probability of prevailing on the merits because
the statements were not actionable and OneTaste could not make
a prima facie showing that Netflix acted with actual malice.  In

support of its malice argument, Netflix stated that it relied on reporting from reputable news sources and had contacted OneTaste for comment. Netflix also argued that OneTaste's denials were not sufficient to show Netflix acted with actual malice by publishing the statements.

In support of its motion, Netflix filed a declaration from Zana Lawrence, a director of documentary film at the company. Her team was responsible for commissioning the documentary and releasing it on Netflix. Lawrence declared that her team "considered and relied on the expertise and investigative work of the production company," and the corroborating reporting of "numerous reputable news outlets," in deciding to release the documentary. Netflix included these articles in its compendium of evidence. Lawrence stated, "I did not ever believe that the statements included in the Documentary that are at issue in this matter were false." Lawrence was aware that Netflix had reached out to OneTaste for comment and that its responses were included in the film.

Netflix also submitted a declaration from Gibson, the director of the OneTaste documentary. She attested that she was present when Wright explained to an FBI agent on the phone that she believed Blanck's rape allegation was credible based on what Wright heard and witnessed at OneTaste. Gibson also detailed her repeated, and ultimately futile, attempts to set up an interview with Daedone or another OneTaste representative to include in the documentary.

Gibson subsequently requested comment and received written responses from OneTaste about topics in the documentary before it aired. OneTaste denied that Blanck was "beaten or sexually assaulted in connection with her participation

8

in OneTaste courses or employment at OneTaste." OneTaste stated that it conducted "50 interviews with customers" and employees, gathered statements from "dozens of people" including Cherwitz, and reviewed "thousands of documents" and "course footage" that purportedly refuted Blanck's allegations. In one response, OneTaste admitted that after a customer was "inappropriately hostile toward" Blanck, OneTaste staff "separated them" and informed the customer "his behavior was inappropriate." Aside from stating that allegations about Cherwitz were untrue, OneTaste did not identify specific individuals who denied Blanck's allegations. OneTaste also did not provide quotes from their interviews or relevant documents in response to the requests about Blanck's allegations. OneTaste stated that although it had offered to make available to Gibson "voluminous" information refuting the various allegations against OneTaste, OneTaste had "not seen any interest" on Gibson's part in the accuracy of the allegations or "in arranging to interview principals who have direct knowledge of OneTaste's ethics, policies, and culture."

Netflix also submitted as an exhibit to its motion an October 21, 2022, letter from OneTaste's counsel to Gibson's counsel. In the letter, OneTaste's counsel stated that based on Gibson's requests for comment, OneTaste understood "that the storyline of the Film includes a narrative about a woman named Ayries Blanck." The letter stated the media had made "false allegations . . . by and about Blanck," including that Cherwitz ordered Blanck to have sex with customers or managers, condoned Blanck's boyfriend's violence, blamed Blanck for the abuse, discouraged her from going to the hospital, and dismissed her physical symptoms. The letter included in the list of the

9

media's "false allegations" that OneTaste set up a Tinder account to arrange for strangers to have sex with Blanck.

The letter asserted OneTaste had interviewed "three of Blanck's closest friends," and each woman said Blanck's allegations "never occurred." Attached to the letter were declarations from two of the friends, which OneTaste claimed established that Blanck's allegations were false. Netflix, however, contended that the statements, from Louisa West and Maya Gilbert, corroborated Blanck's allegations.[4] Specifically, West stated that Daedone and Cherwitz wanted access to Blanck's boyfriend's money and " 'discarded' " Blanck when he did not spend enough, which Netflix claimed was consistent with portions of Blanck's account in her journals. Similarly, Netflix argued that Gilbert's statement that Blanck told her she was " 'going to have thirty days of sex with other people besides [her boyfriend]; make a calendar and schedule people into it,' " corroborated Blanck's claims that OneTaste arranged for Blanck to have sex with people found on Tinder.

**OneTaste's Opposition**

OneTaste opposed Netflix's motion. OneTaste refuted Netflix's claims that the statements were not actionable. OneTaste also contended that it had sufficient evidence to carry its burden to show Netflix acted with actual malice. OneTaste cited "the four corners" of the documentary, and the "substantial evidence proving falsity" it provided to Netflix before the documentary was released, as proof that Netflix knew the challenged allegations were false.

---

[4]    Gilbert's declaration is an April 2022 witness statement submitted in connection with OneTaste's lawsuit in a British court against the BBC for its podcast series on OneTaste.

This evidence included counsel's declaration that OneTaste had no control over or access to Blanck's residence for the majority of the time she was involved in OneTaste. OneTaste also cited a 2021 e-mail from Huet, the Bloomberg journalist who first reported on Blanck's allegations in 2018, requesting an off-the-record conversation with OneTaste leadership. Huet's e-mail concerned a book she was working on about OneTaste that she described as "on a very different scale than some of [her] past reporting and is specifically aiming to capture a complicated topic, not tell a reductive or sensationalized story." Huet stated that she believed "that even though there was hurt at OneTaste, the company also suffered from being deeply misunderstood by the public because it took such a radical approach to sex and wellness." She indicated she believed there "is a nuanced and multifaceted story to be told here, not black and white, and I want to portray that duality."

OneTaste also relied on other statements in West's declaration to support its contention that Netflix knew Blanck's allegations were false. OneTaste pointed to West's statements that Blanck had told her on three separate occasions in 2015 that she resigned from OneTaste because she believed Daedone and Cherwitz had interfered in her relationship with her ex-boyfriend. West further declared that Blanck did not claim, on any occasion, that anyone at OneTaste "facilitated or encouraged any sexual abuse against her; nor did she say that she had been forced by the company to do anything sexual." West asserted that, given how close the two women were, and the detailed discussions she and Blanck had about Blanck being upset with OneTaste, she was "certain that Blanck would have told [her] if anything of that nature had occurred."

11

OneTaste additionally relied on a declaration from another former coworker of Blanck's attesting that, in 2021, Blanck told her that Gibson had asked Blanck to participate in the Netflix documentary. The coworker declared that Blanck said Gibson had offered to pay Blanck for her participation and to insure her against liability for speaking about her experiences. OneTaste stated that it provided this declaration to Netflix on October 21, 2022, and argued that the declaration proved Netflix knew Blanck's allegations were false before airing the documentary. OneTaste also argued that striking its complaint before discovery would violate its due process and equal protection rights. However, OneTaste did not ask the court to lift the discovery stay.

### The Trial Court's Ruling

Although the trial court sustained Netflix's objections to some of OneTaste's additional evidence, the court admitted: documents reflecting Blanck's employment and living situation while she was at OneTaste and her later endeavors; Huet's 2018 Bloomberg article; letters exchanged between counsel for Netflix and counsel for OneTaste in 2022 about the documentary;[5] various articles and a journal publication about the benefits of OM; orders denying Netflix's anti-SLAPP motions in three actions concerning other documentaries and streaming series; and an open letter to Netflix criticizing a different documentary about chronically ill and disabled individuals.

---

[5] The letters concern OneTaste's claims about copyright and privacy issues related to footage used in the documentary, Gibson's efforts to interview Daedone and seek comment from OneTaste, and the accuracy of representations made in the documentary other than Blanck's allegations.

Before the hearing on the motion, OneTaste also submitted "newly acquired evidence" related to discovery OneTaste had obtained in its separate civil suit against Blanck. OneTaste's counsel declared that materials Blanck's sister had produced in response to a subpoena raised questions about the authenticity of the "journals" that served as the source of two allegedly defamatory statements in the documentary. OneTaste claimed the materials failed to corroborate the documentary's claims that Blanck sent journal entries to her sister as e-mails, confirmed Blanck did not write the journals, and confirmed that they could not have been written in 2015. OneTaste asserted this evidence was proof of Netflix's actual malice. Netflix objected to the supplemental evidence.

In April 2024, after a hearing, the trial court granted Netflix's motion. The court found that OneTaste's claim arose from Netflix's distribution of the documentary, which was protected conduct. In the second step of the anti-SLAPP analysis, the court concluded OneTaste failed to produce evidence showing it had a reasonable probability of prevailing on the defamation claim.

The court found that OneTaste's evidence did not demonstrate that OneTaste would be able to prove the statements from Blanck's journal "were in fact false." The court observed that OneTaste failed to proffer testimony from Blanck, her sister, or any other witness refuting the truth of the statements. The court also determined that OneTaste's evidence showing Blanck did not mention her sexual assault claims in conversations with others "does not establish that the assaults did not take place, much less that Netflix acted with actual malice." Finally, the court considered OneTaste's supplemental

13

"new" evidence and concluded it did "not establish[ ] that Netflix had . . . any access to [Blanck's] journals, such that said journals could be used as evidence of Netflix's actual malice in publishing the Documentary."

OneTaste timely appealed.

## DISCUSSION

### I.    Section 425.16

Section 425.16 provides that "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," also known as strategic lawsuits against public participation, or SLAPPs, "shall be subject to a special motion to strike," or an anti-SLAPP motion.  (§ 425.16, subds. (a), (b)(1).)

In determining whether a defendant's anti-SLAPP motion has merit, courts engage in a two-step process.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . .   If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. . . .   [T]he trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*), citing § 425.16, subd. (b)(1) & quoting *id.*, subd. (b)(2).)

OneTaste does not challenge the trial court's conclusion that its defamation claim arose from Netflix's protected activity. (See *Ojjeh v. Brown* (2019) 43 Cal.App.5th 1027, 1036 [documentaries about issues of public interest are "akin to news

14

reporting" and therefore protected speech activity].) Therefore, OneTaste was required to establish a probability of prevailing by demonstrating " 'that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [OneTaste] is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)

"When assessing the plaintiff's showing, the court must also consider evidence that the defendant presents. (§ 425.16, subd. (b)(2).) The court does not, however, weigh that evidence against the plaintiff's, in terms of either credibility or persuasiveness. Rather, the defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element." (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) "If there is a conflict in the evidence (the existence of a disputed material fact), the anti-SLAPP motion should be denied." (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 965 (*Billauer*).)

Our review is de novo. (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451–1452.) We review issues in the anti-SLAPP context independent of the trial court's reasoning and " '[i]f the trial court's decision is correct on any theory . . . , we affirm the order regardless of the correctness of the grounds on which the lower court reached its conclusion.' [Citation.]" (*Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 876.)

## II.  OneTaste Failed To Meet Its Burden as To Actual Malice

OneTaste alleges the five challenged statements in Netflix's documentary falsely communicated that OneTaste subjected

Blanck to sexual assault and condoned violence. OneTaste contends the evidence establishes a probability that it could produce clear and convincing evidence showing Netflix acted with actual malice in publishing these statements. Specifically, OneTaste asserts the evidence shows Netflix knew that Blanck's sexual assault allegations were false at the time it published the statements.

We disagree. OneTaste did not submit evidence in the trial court sufficient to make a prima facie showing that Netflix published the challenged statements with actual malice.[6]

### A. Actual malice

To prevail on a cause of action for defamation, a plaintiff who is a public figure must prove the defendant intentionally published a false statement of fact with actual malice. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 675 (*Balla*).) Accordingly, to defeat a special motion to strike a defamation claim, a public

---

[6] OneTaste belatedly challenges the trial court's evidentiary rulings in its reply brief on appeal. We do not consider arguments raised for the first time in reply. (*Frankel v. Kizer* (1993) 21 Cal.App.4th 743, 747, fn. 4 [declining to consider appellant's challenge to admissibility of declaration raised only in reply brief].) OneTaste's arguments regarding the trial court's evidentiary rulings are forfeited. Consistent with the principle that an anti-SLAPP motion triggers "a 'summary-judgment-like procedure at an early stage of the litigation' " (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 945), we consider only the evidence the trial court admitted and considered during that process. (See *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 [on summary judgment, party that forfeits claim of error as to trial court's evidentiary rulings on appeal may not rely on evidence to which evidentiary objections were sustained].)

figure plaintiff must demonstrate a probability that it can produce clear and convincing evidence of actual malice.  (*Edward v. Ellis* (2021) 72 Cal.App.5th 780, 793.)

"The actual malice standard . . . requires a showing that the allegedly false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'  [Citation.]  The reckless disregard standard requires a 'high degree of awareness of . . . probable falsity . . . .'  [Citation.] 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'  [Citation.]"  (*Annette F. v. Sharon S.* (2004) 119 Cal.App.4th 1146, 1167.)  "The test is subjective, not objective." (*Collins v. Waters* (2023) 92 Cal.App.5th 70, 73 (*Collins*).)

Direct evidence is not required.  "A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice."  (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 84 (*Christian Research Institute*).) "Considerations such as 'anger and hostility toward the plaintiff,' 'reliance upon sources known to be unreliable [citations] or known to be biased against the plaintiff,' and 'failure to investigate' may, 'in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication.'  [Citation.]  Such evidence is relevant 'to the extent that it reflects on the subjective attitude of the publisher,' and failure to investigate, without more, generally is insufficient." (*Balla, supra*, 59 Cal.App.5th at p. 683, quoting *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 258 (*Reader's Digest*).)

"The requisite malice must be shown by clear and convincing evidence."  (*McGarry v. University of San Diego* (2007)

17

154 Cal.App.4th 97, 114 (*McGarry*).) This means " ' " ' "[t]he evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." ' [Citation.]" [Citation.]' [Citation.]" (*Reed v. Gallagher* (2016) 248 Cal.App.4th 841, 862 (*Reed*).)

### B. OneTaste's evidence failed to demonstrate a probability that it can produce clear and convincing evidence of actual malice

The evidence submitted by OneTaste, when credited, fails to establish a prima facie showing that Netflix published the alleged defamatory statements with actual malice.

OneTaste offered evidence reflecting the terms of Blanck's employment with OneTaste, her living situation, and her subsequent ventures. None of this evidence shed light on Netflix's subjective belief or knowledge about the truth of the challenged statements and was therefore irrelevant. (*Reader's Digest*, *supra*, 37 Cal.3d at p. 258.) Similarly, articles concerning the merits or legitimacy of OneTaste's OM methods and third-party criticisms of different Netflix documentaries are not probative of Netflix's knowledge or beliefs about the challenged statements in the documentary.

OneTaste appears to argue that the remaining evidence supported an inference of malice because it showed OneTaste provided Netflix with proof that Blanck's account of sexual abuse was false, which Netflix chose to ignore.[7] The evidence fails to support this claim.

---

[7] On appeal, OneTaste contends that Netflix admitted the statements were false by "commit[ing] to the defense that it wasn't reckless." Not so. Netflix could prevail on its motion by

18

To support an inference of malice, the evidence was required to establish facts supporting the conclusion that Netflix "purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity" of the challenged statements. (*McGarry*, *supra*, 154 Cal.App.4th at p. 114.) "Similarly, an inference of malice may be drawn 'when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation[,] . . . [or] where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.' " (*Christian Research Institute*, *supra*, 148 Cal.App.4th at p. 85.) "Reasonable minds could unhesitatingly agree that people *purposefully* ignorant about the truth can have a high degree of subjective awareness of probable falsity of a claim they deliberately avoid checking." (*Collins*, *supra*, 92 Cal.App.5th at p. 85.)

OneTaste's other evidence was its representation that OneTaste did not have access to Blanck's residence, Huet's e-mail to OneTaste leadership seeking an interview for her book, letters between counsel regarding various legal disputes over the content of the documentary, and declarations from Blanck's friends stating that Blanck had not mentioned her sexual abuse allegations and Gibson offered her a financial incentive and protection against liability to participate in the documentary.

---

either establishing a defense, such as truth, or by showing the absence of a necessary element of OneTaste's defamation cause of action. (*Billauer*, *supra*, 88 Cal.App.5th at pp. 964–965.) Netflix's decision to show the absence of actual malice is not a concession about the falsity of the claims.

This evidence did not show that OneTaste presented Netflix with proof demonstrating the probable falsity of Blanck's claims of sexual assault or other violence.  That OneTaste had no access to Blanck's residence while she was involved in OneTaste does not refute her allegations, or the statements in the documentary based on those allegations, which do not imply OneTaste had physical access to her residence.  Gibson's offer to pay Blanck to participate in the documentary also does not suggest falsity, particularly considering that Blanck's allegations and the fact that she had settled claims against OneTaste had already been widely reported.  Nor does Huet's 2021 e-mail to OneTaste leadership, in which she suggested she held a sympathetic and nuanced perspective on OneTaste, support the conclusion that she "recanted" her 2018 reporting on Blanck's allegations and therefore Netflix should have understood the allegations to be obviously false.  Not only did the message fall short of recanting the prior reporting—Huet continued to say, somewhat euphemistically, that she believed "there was hurt at OneTaste"—OneTaste failed to show that Netflix was aware that Huet sent the e-mail, such that it could or should have entertained doubts about the veracity of Huet's reporting at the time of the documentary's production or release.  (*Khawar v. Globe Internat., Inc.* (1998) 19 Cal.4th 254, 262 (*Khawar*) [reckless disregard amounts to actual malice if publisher entertains serious doubts as to truth "at the time of publication"].)

The declarations from Blanck's former OneTaste associates similarly failed to support an inference that Netflix was aware of probable falsity.  West provided the only statements relevant to specific allegations at issue, in which she declared that Blanck

20

did not tell her in 2015 that she had experienced abuse or assault at OneTaste. That Blanck did not share her allegations about sexual assault with one close friend does not suggest Netflix knew Blanck's allegations were probably false, inherently improbable, or obviously dubious. (*Christian Research Institute*, *supra*, 148 Cal.App.4th at pp. 85, 88.)

Moreover, OneTaste did not submit any evidence suggesting that Netflix deliberately avoided investigating the veracity of Blanck's claims. There was no evidence, for example, that Netflix knew the identities of witnesses but failed to contact them. (Cf. *Khawar*, *supra*, 19 Cal.4th at p. 277 [newspaper's failure to interview witnesses before repeating claim that journalist assassinated Robert Kennedy sufficient for malice].) Nor is there evidence that OneTaste made an offer of proof that Blanck's allegations were false and Netflix deliberately failed to examine the proffer. (Cf. *Antonovich v. Superior Court* (1991) 234 Cal.App.3d 1041, 1053 [candidate acted with malice by taking no steps to inquire into truth of statements after opponent offered to submit proof of falsity for inspection].)[8] OneTaste's evidence did not refute or undermine Netflix's evidence that it took affirmative steps to investigate Blanck's allegations. Gibson's declaration details her extensive efforts, from 2020 to 2022, to interview Daedone or another OneTaste representative for the documentary. The evidence also reflects that Gibson sought and received comments from OneTaste about a host of claims in the

---

[8] While OneTaste asserts its later-acquired evidence established the falsity of the "journal" entries, it cannot claim that it provided such information to Netflix before the documentary was released.

documentary, including Blanck's specific claims of sexual assault and abuse.

OneTaste's denials, moreover, do not constitute proof of probable falsity. A denial by a public official does not alone establish malice. (*Young v. CBS Broadcasting, Inc.* (2012) 212 Cal.App.4th 551, 564.) OneTaste's blanket denial of Blanck's claims, and its evidence that Blanck made statements to others that did not disclose her allegations, did not " 'carr[y] a doubt-inducing quality' " about the truth of her experiences that " 'serves to buttress a case for actual malice.' " (*Ibid*.) Indeed, in response to Gibson's request for comment, OneTaste's denials regarding Blanck's allegations were supported only with general statements rather than specific responses from individuals involved or copies of relevant documents and, in some cases, the denials confirmed portions of Blanck's claims. (See *Harte–Hanks Communications v. Connaughton* (1989) 491 U.S. 657, 692, fn. 37 [" 'denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error' "].)

*Collins*, *supra*, 92 Cal.App.5th 70, which OneTaste relies on to support its arguments, provides a useful contrast. In *Collins*, a congressional candidate heard his opponent was planning to claim he was dishonorably discharged from the Navy and preemptively posted "an official-looking" document on his campaign website stating he had been honorably discharged. (*Id*. at pp. 84, 74.) The candidate's opponent subsequently ran campaign advertisements asserting he was dishonorably discharged. (*Id*. at p. 74.) The candidate sued for defamation and the trial court granted his opponent's anti-SLAPP motion. (*Id*. at pp. 73, 77–78.) In reversing, the appellate court concluded

22

the facts created an inference of malice. (*Id*. at p. 81.) The opponent's failure to check the candidate's "facially valid and easily verifiable documentary proof" of the false statements demonstrated willful blindness about the truth that could constitute clear and convincing evidence of actual malice. (*Id*. at pp. 81, 85.)

OneTaste did not proffer comparable evidence of falsity here. There was no evidence that "completely pierced through to absolute truth" about Blanck's claims, which Netflix could have easily verified but chose to ignore. (*Collins*, *supra*, 92 Cal.App.5th at p. 84.) OneTaste did not produce evidence directly refuting Blanck's claims of sexual assault, such as her statement recanting the allegations or other proof that the incidents she described did not occur or could not have happened. Neither below nor on appeal did OneTaste identify specific individuals Netflix reasonably should have interviewed, or specific documents it reasonably should have consulted, which would have revealed the falsity of Blanck's allegations.

Not only is the record devoid of any definitive proof of the falsity of Blanck's underlying allegations, but the existing evidence in fact supports Netflix's subjective belief in their truth at the time of publication. Multiple media outlets reported on the accusations against OneTaste for exploitative practices, and two different publications reported on Blanck's allegations of sexual abuse against OneTaste years before the documentary aired. Netflix's director of documentary film confirmed that Netflix relied on these publications in forming its subjective belief that Blanck's allegations were true. Although OneTaste disputed the reporting, it did not contend that these publications were disreputable or untrustworthy. (See *Reader's Digest*, *supra*, 37

23

Cal.3d at pp. 258–259 [no actual malice where no direct evidence showed defendant believed source was false and plaintiff did not question reputability of sources]; *McGarry*, *supra*, 154 Cal.App.4th at p. 117 [no malice where defendant made statements "based on information she had received from people she believed to be reliable sources"].)  Nor was Netflix required to present an objective account of OneTaste.  As long as Netflix "ha[d] no serious doubts concerning" the truth of its narrative, it could "present but one side of the story."  (*Reader's Digest*, at p. 259; see also *ibid*. [First Amendment protects publication "less than objective in its presentation"].)

Despite suggesting that Netflix manufactured the story about Blanck's experiences at OneTaste, OneTaste proffered no evidence in the trial court supporting the claim or indicating it could be established.  (See *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 189 [quote corroborated by other sources "not so improbable as to support the inference that [reporter] deliberately falsified" it].)

OneTaste did not demonstrate a probability that it can produce evidence " ' " ' "command[ing] the unhesitating assent of every reasonable mind" ' " ' " that Netflix subjectively believed Blanck's allegations were false or that it acted with reckless disregard as to whether the challenged statements were false or not.  (*Reed*, *supra*, 248 Cal.App.4th at p. 862.)

## III.  OneTaste's Requests for Judicial Notice

Rather than relying on the evidence presented in the trial court, OneTaste's reply brief is almost entirely based on the evidence contained in two requests for judicial notice, or alternatively, requests to augment the record, filed on appeal.

24

The requests ask us to consider 45 exhibits totaling over 700 pages. With one exception, we deny both requests.[9]

Courts use judicial notice to recognize and accept a fact " 'relevant to an issue in the action without requiring formal proof of the matter.' " (*Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 882 (*Lockley*).) "A matter ordinarily is subject to judicial notice only if the matter is reasonably beyond dispute." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.) Our authority to take judicial notice "is subject to the limitation that the proffered evidence be relevant. [Citation.] It is not sufficient that the evidence be relevant to an argument made by its proponent. The evidence must be relevant to the disposition of the matter. [Citations.] Further, we 'generally do not take judicial notice of evidence not presented to the trial court' and will do so only in 'exceptional circumstances.' [Citation.]" (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 745–746.)

OneTaste requests that we take judicial notice of numerous news articles about the anti-SLAPP statute, news reports about the federal prosecution of Daedone, and a transcript of a presidential initiative regarding free speech. Because OneTaste has not demonstrated the relevance of these documents to resolving the issues on appeal, judicial notice is not proper. (See *Save Lafayette Trees v. East Bay Regional Park Dist.* (2021) 66 Cal.App.5th 21, 29, fn. 2 [denying request for judicial notice of documents "not necessary to resolve this appeal"]; see also *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120

---

[9] We grant OneTaste's request to augment the record with the trial court's April 2024 tentative ruling granting Netflix's anti-SLAPP motion.

25

Cal.App.4th 251, 266, fn. 13 ["judicial notice is not taken of matters irrelevant to the dispositive points on appeal"].)

OneTaste also requests that we consider a litany of documents from OneTaste's ongoing civil action against Blanck and the federal prosecution of Daedone and Cherwitz, which became available after the trial court granted Netflix's motion to strike in the instant case.[10] We decline to do so. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) As a result, we generally do not consider documents that were not before the trial court or matters that occurred after the appealed judgment or order was issued. (*MMM Holdings, Inc. v. Reich* (2018) 21 Cal.App.5th 167, 187 [declining to take judicial notice of documents not before the trial court in anti-SLAPP appeal].) OneTaste has advanced no persuasive basis for us to depart from that rule in this case.

Further, while we may take judicial notice of the *existence* of court records, "the truth of matters asserted in such documents is not subject to judicial notice." (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482; *Lockley*,

---

[10] OneTaste submits a transcript of Autymn's August 2024 deposition in the civil action, a forensic expert's October 2024 analysis of Autymn's hard drive containing typewritten versions of Blanck's journals, a copy of the drafts of the journals forensically examined, numerous discovery letters filed by the government and defense counsel in the criminal case, transcripts from related hearings, excerpts from the government's motion in limine, e-mails between Blanck and an FBI agent, and a court order from the civil case against Blanck.

26

*supra*, 91 Cal.App.4th at p. 882 [courts may not take judicial notice of "the truth of hearsay statements in decisions and court files"].) OneTaste asks us not only to consider that the court records in question exist or were issued, transmitted, or filed, but also to consider the truth of the statements made in the documents to conclude that OneTaste met its burden in opposition to Netflix's motion. This would be an improper use of judicial notice.

Accordingly, we deny OneTaste's requests for judicial notice.[11] As the California Supreme Court has repeatedly explained, "Augmentation does not function to supplement the record with materials not before the trial court. [Citations.] Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

## IV. OneTaste's Constitutional and Public Policy Challenges To the Anti-SLAPP Statute Fail

OneTaste contends several aspects of the anti-SLAPP statute are unconstitutional, including the element of actual malice required for public figures, the fee-shifting provision, the evidentiary burdens on the parties, and the automatic discovery

---

[11] Netflix moved to strike OneTaste's reply brief for relying on exhibits in its requests for judicial notice that were not before the trial court and for raising arguments for the first time in reply. In light of our ruling on OneTaste's requests for judicial notice, we deny Netflix's motion as moot.

27

stay.  OneTaste's appellate briefing often fails to specify a constitutional injury, stating only that the provisions are "unconstitutional."  When OneTaste does reference a specific claim, such as due process, the right of privacy, or free speech, it refers to the constitutional right only in passing and provides no cogent argument or citation to supporting authority.  We deem these arguments forfeited.  (*City of Tracy v. Cohen* (2016) 3 Cal.App.5th 852, 857, fn. 6; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, [they are] waived."].)

Further, with respect to OneTaste's due process challenge to the automatic discovery stay, OneTaste does not acknowledge that the anti-SLAPP statute allowed both parties to seek limited discovery.  Section 425.16, subdivision (g), provides that "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."  OneTaste did not move for limited discovery on this basis.

Finally, OneTaste's argument that application of the anti-SLAPP statute in this case "shut[s] the door" on meritorious defamation claims, and permits defendants with more resources to chill plaintiffs' speech, is unavailing.  As our high court has recognized, "[t]he Legislature . . . has provided . . . substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism."  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1122–1123; see *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66 [various provisions of § 425.16, including subdivision (g) "mitigate the[ ] impact" of anti-SLAPP motions], citing § 425.16, subds. (b),

28

(c), (g).)  To the extent OneTaste is advocating for reform or repeal of the anti-SLAPP statute, "[t]hese competing policy arguments are 'best directed to the Legislature, which can study the various policy and factual questions and decide what rules are best for society.'  [Citation.]  Our task here is to construe the statute as it is now written." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 723.)

## DISPOSITION

The trial court's order is affirmed.  Respondent to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.

Filed 11/20/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ONETASTE INCORPORATED, | B339113 |
| Plaintiff and Appellant, | |
| | (Los Angeles County |
| | Super. Ct. No. 23STCV27119) |
| v. | |
| | ORDER CERTIFYING OPINION |
| | FOR PUBLICATION |
| NETFLIX, INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on October 30, 2025, was not certified for publication in the Official Reports. Upon request by respondent and a non-party to this action, and good cause appearing, it is ordered that the opinion shall be published in the Official Reports.

Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

<hr />

EGERTON, Acting P. J.        ADAMS, J.        HANASONO, J.